UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13:cr:49-DWF-TNL |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S POSITION |
| | ) | REGARDING SENTENCING |
| ANDRE JAMES HERTZOG, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S POSTION REGARDING SENTENCING**

The United States of America by its attorneys, Jocelyn Samuels, Acting Assistant Attorney General, Department of Justice, Civil Rights Division; Christine M. Siscaretti, Trial Attorney; and Mark Kappelhoff, Special Assistant United States Attorney for the District of Minnesota, hereby submits its Position Regarding Sentencing in the above-entitled matter.

**1.    SENTENCING GUIDELINES.**

   **A.    Base Offense Level.**

In calculating the defendant's appropriate offense level, the Presentence Investigation Report ("the Report") cross references the guideline at U.S.S.G. §2A3.1 for Criminal Sexual Abuse. See Presentence Investigation Report for Andre James Hertzog, at 10, ¶44.  The United States stands by the guidelines calculations which the government and the defendant stipulated to in the plea agreement.  Based on the government's understanding of the evidence, it did not contemplate the application of the cross reference to U.S.S.G. §2A3.1.  Instead, the government maintains that, under the particular facts of this case, the appropriate base offense level is 24 pursuant to guidelines provision U.S.S.G §2G1.3(a)(4).

### B. Specific Offense Characteristics.

The government asserts that specific offense characteristic U.S.S.G §2G1.3(b)(2)(B) applies because minor victim TF was unduly influenced to engage in prohibited sexual conduct. As noted in paragraph 56 of the Report, Application Note 3(B) indicates that, in a case where a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that this increase is applicable. Application Note 3(B) and the November 1, 2009, Supplement to Appendix C, also indicate that this increase is applicable to attempted sexual conduct. The Report finds that Hertzog was age 28 at the time of the offense, and that TF was age 17. As such, the government concurs with the Report's finding that a 2-level increase is applicable. USSG §2G1.3(b)(2)(B); see U.S. v. Sanderson, Nos. 11-2488-cr(L), 11-2608-cr(CON), 12-321-cr(CON), 2013 WL 1150491, at *1 (2nd Cir. March 21, 2013) (upholding the District Court's application of the two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(2)(B) based upon the factual statements in the presentence report noting that the participant was at least ten years older than the minor).

### C. Victim Related Adjustment.

The government maintains that the two-level "vulnerable victim" enhancement pursuant to U.S.S.G. §3A1.1(b)(1) should be applied in this case. As discussed below in further detail, the government submits that the two-level enhancement level is warranted, as agreed by both the government and the defendant in the plea agreement.

In discussing the application of U.S.S.G. §3A1.1(b)(1) to victim GM, the Report states that Application Note 2 of the provision defines vulnerable victim to mean a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Report, at 10, ¶47. With regard to victim GM, the Report

states that "[w]hile Hertzog referred to the victim as "slow," it does not appear that she suffers from any mental or cognitive disabilities, which would make the victim "unusually vulnerable." Id.

The government asserts that the defendant did not merely refer to victim GM as "slow." Instead, as evidenced throughout the recorded jail calls between the co-defendant and defendant, the defendants, acting together, targeted GM because of this perceived trait, precisely because they believed that it would make her easier to manipulate and victimize.

Further, this characteristic was not the only vulnerability of GM's that the defendants identified and exploited. Although she was legally an adult, GM was still an impressionable, teen-aged woman, with limited life experience. In one telephone conversation with the defendant, Hertzog describes GM and another person, saying that they were "both young… [t]hey're both 18. . . [s]o if you get one, you can probably get the other too, cuz you know how those hoes run in packs." Further, GM's mother was planning to move out of state, leaving her without a place to live in the St. Paul area. In recorded telephone conversations, Hertzog specifically discusses GM's difficult living situation with GM herself, and says that he would put her in touch with someone who could help her remain in St. Paul. Hertzog then put GM in contact with the co-defendant, Bramer, who moved GM into her own home for the purpose of coercing her to perform commercial sex acts. Once GM was living with Bramer, it was easier for the defendants to control, manipulate, and coerce GM into performing commercial sex acts – the primary purpose of the defendants' scheme.

The government submits that being perceived as "slow," combined with her youth, limited life experiences, and her need for a place to live, made GM an unusually vulnerable victim. Further, as evidenced by their recorded conversations, Hertzog and Bramer knew about

3

these vulnerabilities and specifically targeted GM because of them. As a result, the government asserts that two-level enhancement pursuant to U.S.S.G. §3A1.1(b)(1) should be applied with regard to GM. See U.S. v. Dullum, 560 F.3d 133, 140 (3rd Cir. 2009) (upholding the two-level vulnerable victim enhancement where the court found evidence that the victims had a history of substance abuse and that they were "a little slow," and where one of the victim suffered physical and mental effects from cirrhosis); U.S. v. Evans, 272 F.3d 1069, 1090 (8th Cir. 2001) (upholding the vulnerable victim enhancement where one victim was a minor whose father had died when she was young and whose mother was incarcerated, and where another victim was addicted to drugs and alcohol).

In discussing the application of the vulnerable victim enhancement to victim TF, the Report notes that Application Note 2 indicates that the enhancement should not be applied "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." The Report finds that the guideline at U.S.S.G. §2G1.3 is applied for offenses involving minors, and thus already takes her young age into account. Further, the Report asserts that TF voluntarily began living with the defendants and reached out to her foster mother for help when trying to escape from the defendants. As a result, the Report finds that TF's age and difficult family circumstances do not make her unusually vulnerable or particularly susceptible.

As the Report notes, TF was a minor who had a difficult family situation, as evidenced by the fact that she was on juvenile probation, had been placed in foster care, and was not getting along with her foster family. The defendants were well aware of TF's difficult situation, which the defendants exploited when the defendant supplied TF with marijuana and a place to live. The fact that TF reached out to her foster mother after it became clear that the defendants had taken her out of state and were going to force her to engage in commercial sex acts does not

negate the fact that her family difficulties rendered her unusually vulnerable to the co-defendants' calculated overtures. Instead, the fact that she reached out to someone who she was not getting with only highlights TF's desperate need to escape the defendants' control. As a result, the government submits that the two-level vulnerable victim enhancement should apply with regard to TF. See Evans, 272 F.3d at 1090 (upholding the vulnerable victim enhancement where one victim was a minor whose father had died when she was young and whose mother was incarcerated, and where the defendant supplied drugs to another victim who was addicted to drugs and alcohol).

2. **ACCEPTANCE OF RESPONSIBILITY.**

The government agrees that a three-level reduction for acceptance of responsibility is warranted, provided that defendant continues to accept responsibility for his crimes.

3. **CRIMINAL HISTORY.**

The government agrees that the defendant's criminal history category is VI.

4. **APPLICABLE GUIDELINE RANGE.**

The government maintains that the appropriate guideline range is 110-137 months imprisonment.

5. **FINE RANGE.**

The government concurs in the Report's conclusion that the fine range for the defendant's offense is $17,500 to $175,000.

6. **RESTITUTION**

At sentencing, the government will provide the Court with evidence regarding expenses incurred by the victims for medical and psychological care, and will respectfully ask the Court to order the defendant to pay restitution pursuant to 18 U.S.C. § 3663A(b)(2).

In addition, the government will ask the Court to order the defendant to pay restitution to the victims, pursuant to 18 U.S.C. § 1593. According to this statutory provision, the restitution order "shall direct the defendant to pay the victim ... the full amount of the victim's losses," and those losses are defined to include:

> the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.).

§ 1593(b)(1),(3) (emphasis added).

At sentencing, the government will provide evidence regarding the amount of the victim's losses pursuant to 18 U.S.C. § 1593.

**7.   SENTENCING FACTORS.**

Under 18 U.S.C. §3553(a), when determining the ultimate sentence, the Court looks to the nature and circumstances of the offense; the history and characteristics of the defendant; the seriousness of the offense; the need to promote respect for the law; the need to provide adequate deterrence and protection of the public; providing the defendant with needed educational training, vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; and the applicable guideline sentencing range. 18 U.S.C. §3553(a).

Acting in concert with his co-defendant, Hertzog engaged in a premeditated scheme to recruit two young, vulnerable teenagers and compel them to engage in commercial sex acts for his personal enrichment. Over the course of 15 months, Hertzog, along with his co-defendant, used a variety of coercive tactics, including assaults, threats, constant monitoring, isolation, and psychological manipulation to cause victim GM to engage in numerous commercial sex acts. The defendants used a similar scheme to recruit and manipulate the second victim, TF, with an

6

eye toward compelling her to engage in commercial sex acts. Fully aware that TF was only seventeen-years-old, the defendants drove her to Illinois where they told TF that she could not return home to Minnesota until she "made money" by engaging in commercial sex acts. Fortunately, TF managed to escape before the defendants could fully implement their plan.

The shear callousness of the defendants' sex trafficking scheme was captured in a series of recorded phone calls between Hertzog and his co-defendant. The Report recounted several of the most relevant phone calls, which provide an unvarnished and graphic window into Hertzog's culpability in exploiting victim GM. The government urges the Court to take these calls into consideration when fashioning an appropriate sentence for Hertzog.

Hertzog and his co-defendant abused and traumatized the victims, leaving them with emotional scars that may never fully heal. Victim GM's impact statement powerfully captures the trauma she suffered at the hands of Hertzog and the co-defendant:

> I am traumatized, scarred physically and emotionally by what these "people" have done, the stress me and my family endure is still unbearable. The many levels of torture and abuse that was inflicted on me will continue to affect me and many loved ones for quite some time because healing from these events is a long process.

Hertzog must be held accountable for his conduct and the harm he caused to the victims in this case.

The government further notes that Hertzog has established an extensive criminal history at a relatively young age. He has been in and out of jail for most of his adult life, and many of his prior criminal offenses involve violence. And, notably, Hertzog managed to launch and pursue the instant criminal scheme of exploiting victim GM while he was incarcerated for another criminal offense. He also has engaged in misconduct during his latest period of incarceration, which has caused him to be detained in the segregation unit in the jail. All of this suggests that Hertzog has little, if any, respect for the law and he seems undeterred from

engaging in criminal conduct even while he's incarcerated for other offenses. As such, he poses a public safety risk.

The defendant, along with his co-defendant, carried out a well thought-out plan to prey on young, at-risk teenagers and exploit them. In light of the predatory nature of this offense, the defendant's prior criminal history, and his apparent lack of remorse for his conduct, the government urges the Court to impose a sentence that protects the public and deters the defendant from engaging in future criminal conduct. As set forth in the plea agreement entered into by the government and the defendant, the government submits that the defendant's appropriate guidelines range is 110-137 months. Accordingly, the government urges the Court to sentence the defendant toward the top of the guidelines range.

**8.     SUPERVISED RELEASE/PROBATION.**

The government requests a supervised release term of five years. The government further notes that the co-defendant has indicated that she is afraid of Hertzog, who is currently serving a 23-month state prison sentence for an incident during which he broke the co-defendant's car windshield and threatened to kill her. As a result, the government recommends that the Court order Hertzog to have no contact with his co-defendant during the executed portions of their sentences and during the term of probation.

Dated: January 15, 2014

                                              Respectfully submitted,

                                              JOCELYN SAMUELS
                                              Acting Assistant Attorney General
                                              Civil Rights Division
                                              U.S. Department of Justice

                                    By:     _s/ Mark J. Kappelhoff_

Special Assistant United States Attorney
Minnesota Bar No. 0392981

*s/ Christine M. Siscaretti*
Christine M. Siscaretti
New York Bar No. 4327748
Attorney for the Government
Trial Attorney
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Criminal Section – PHB 5538
Washington, DC 20530
Telephone: (202) 514-7852
Fax: (202) 514-8336
Christine.Siscaretti@usdoj.gov

9